<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DANIEL CAPALDO, | : | **Hon. Freda L. Wolfson** |
| Petitioner, | : | Civil No. 04-4918 (FLW) |
| v. | : |  |
| JOHN NASH, | : | <u>OPINION</u> |
| Respondent. | : |  |

**APPEARANCES:**

    DANIEL CAPALDO, #45451-053
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640
    Petitioner <u>Pro</u> <u>Se</u>

    IRENE E. DOWDY, ASSISTANT UNITED STATES ATTORNEY
    CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
    402 East State Street, Room 430
    Trenton, New Jersey 08608
    Attorney for Respondents

<u>WOLFSON</u>, District Judge

    Petitioner Daniel Capaldo filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the calculation of his federal sentence by the Bureau of Prisons ("BOP"). The government filed an Answer opposing the Petition, together with certified copies of the sentencing transcript and other relevant documents. Petitioner filed a Supplemental Brief. For the reasons expressed below, the Court dismisses the Petition.

## I. BACKGROUND

Petitioner challenges the refusal of the BOP to give him credit against his 168-month federal sentence for 48 months and 14 days that he served in the custody of the State of New York between June 13, 1992 (the date of his arrest by New York authorities, and June 28, 1996 (the date on which Petitioner's 168-month federal sentence was imposed). Petitioner argues that the sentencing court imposed a 168-month federal sentence, to run retroactively concurrent with the New York sentence he had been serving since June 13, 1992. He maintains that the BOP violated the sentencing order by refusing to give him credit against his federal sentence for this 48-and-one-half-month period. The BOP filed an Answer opposing the Petition, accompanied by certified copies of the sentencing transcript and other relevant documents. Petitioner filed a Supplemental Brief in reply to the Answer.

The essential facts are not in dispute. On June 13, 1992, law enforcement authorities from the State of New York, Kings County, arrested Petitioner. On December 21, 1992, New York authorities in Richmond County also arrested him. On January 7, 1993, the court in Kings County imposed two consecutive sentences of five and one-half years to life, to run concurrently with the yet to be imposed Richmond County sentences. On February 3, 1993, Richmond County sentenced Petitioner to eight years to life, plus three to nine years, to run concurrently to the Kings County sentence.

While Petitioner was in state custody, on December 6, 1995, a federal indictment was filed in the United States District Court for the Eastern District of New York, charging Petitioner with conspiracy to distribute cocaine and other charges. See United States v. Capaldo, Crim. No. 95-1155 (RR). On February 21, 1996, Petitioner entered into a written plea agreement, withdrew

his "not guilty" plea, and entered a plea of "guilty." (Pet., Ex. D) The sentencing hearing took place on June 28, 1996, before United States District Judge Reena Raggi. See United States v. Sessa, Crim. Nos. 94-1119, 95-1155 transcript of sentencing (E.D. N.Y. June 28, 1996). The judgment provides:

> "The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **ONE HUNDRED SIXTY EIGHT (168) MONTHS ON COUNT 2** [conspiracy to possess with intent to distribute cocaine], **AND SIXTH (60) MONTHS ON COUNT 9** [conspiracy to commit income tax evasion] **TO RUN CONCURRENTLY WITH ONE ANOTHER AND THE STATE SENTENCE**."

United States v. Capaldo, Crim No. 95-1155 judgment (E.D. N.Y. filed June 28, 1996). Petitioner was returned to State custody after the sentencing hearing. On July 26, 2001, New York authorities paroled Petitioner to the custody of the United States Marshal.

The BOP subsequently calculated Petitioner's federal sentence as commencing on June 28, 1996, the date it was imposed, and running for 168 months. The BOP did not award any credit for the period between Petitioner's arrest by New York authorities on June 13, 1992, and imposition of his federal sentence on June 28, 1996. The BOP calculated Petitioner's projected release date as September 7, 2008, with good conduct time. On April 25, 2002, Petitioner filed a Request for Administrative Remedy seeking credit against his sentence of the 49-month period between June 13, 1992, and June 28, 1996. The BOP finally denied administrative relief on August 20, 2002.

Petitioner maintains that Judge Raggi intended his 168-month federal sentence to commence on June 13, 1992, the date on which he was taken into custody by New York. See Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002). He argues that, by failing to give him credit for

3

the 49-month period he served in New York prior to imposition of the federal sentence on June 28, 1996, the BOP violated the terms of the sentence. The BOP argues that the transcript of the sentencing hearing shows that Judge Raggi gave Petitioner credit against his federal sentence for the 49-month period by reducing the sentence itself from 235-months under the guidelines to 186 months, and an additional 18-month downward departure.

## II.  DISCUSSION

A.  Jurisdiction

Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless–
> . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(3).

This Court has jurisdiction under § 2241 to consider the instant Petition because Petitioner seeks not to vacate or correct his sentence, but to implement the sentence as imposed. See Rios v. Wiley, 201 F.3d 257, 270-71 (3d Cir. 2000) (where prisoner asserts that BOP failed to effectuate sentence, habeas remedy is appropriate); Gomori v. Arnold, 533 F.2d 871, 874 (3d Cir. 1976) (challenging erroneous computation of release date); Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973) (claim for credit for time served prior to federal sentencing). Moreover, if the government erred in calculating his sentence, the addition of 49 months to Petitioner's federal sentence carries a potential for a miscarriage of justice that can be corrected through habeas corpus.[1] Murray v. Carrier, 477 U.S. 478, 495 (1986); Barden v. Keohane, 921 F.2d 476 (1991).

---

[1] The government concedes that Petitioner exhausted administrative remedies.

B.  The Merits

Petitioner argues in effect that Judge Raggi intended to make his federal sentence retroactively concurrent with his New York sentence and that the BOP violated the sentencing order by denying him credit against his 168-month sentence for the 49 months he served in the custody of New York prior to imposition of the federal sentence on June 28, 1996.  He asserts that the plea agreement provided for his 168-month federal sentence to commence on June 13, 1992, rather than June 28, 1996.  As previously stated, Respondents argue that the plea agreement provided for the 168-month sentence to begin on the date it was imposed, June 28, 1996, and that Judge Raggi gave Petitioner credit for the 49 months he had served in New York custody, plus an additional 18 months, by deducting 67 months from the sentence of 235 months to 293 months under the Sentencing Guidelines.   Because the plea agreement and the sentencing transcript indicate that the 168-month sentence commenced on June 28, 1996, the date it was imposed, and that Judge Raggi deducted the 49 months which Petitioner served prior to June 28, 1996, and deducted an additional 18 months from the 235-month sentence under the Sentencing Guidelines in order to comply with the 168-month agreed upon sentence, Petitioner is not entitled to the relief he seeks.

The plea agreement expressly states that the agreed-upon 168-month sentence will commence pursuant to 18 U.S.C. § 3585(a) and (b).  Paragraph 2 of the plea agreement provides in relevant part:

> . . . the Office and the defendant agree that a specific sentence of
> 14 years' imprisonment is the appropriate disposition of this case.
> This sentence will commence as calculated by the Bureau of
> Prisons pursuant to 18 U.S.C. §§ 3585(a) and (b) and is to run
> concurrently with any then undischarged term of state

> imprisonment . . . .  Should the agreed-upon sentence depart downward from the adjusted offense level under the Sentencing Guidelines as calculated by the Probation Department, the defendant and the office consent to such a departure and the parties will inform the Court at the time of sentencing why the departure is justified.

(Plea Agreement, ¶ 2, Ex. D to Pet.)  Paragraph 4 of the plea agreement states: "The defendant further agrees not to seek any reduction of the specific sentence set forth in paragraph 2 or to request that the specific sentence set forth in paragraph 2 commence from any date other than the date required by 18 U.S.C. §§ 3585(a) and (b)."  (Id. ¶ 4.)

The plea agreement anticipates that the Probation Department will calculate Petitioner's sentence under the Sentencing Guidelines as carrying a range of 235 to 293 months, and states that the court will depart downward by deducting the time Petitioner served in New York custody prior to imposition of the sentence from this range.  Specifically, paragraph 3 provides in relevant part:

> . . . Thus, the appropriate adjusted offense level to be applied is 38, which carries a range of imprisonment of 235 to 293 months . . . .  In accordance with U.S.S.G. § 5G1.3(b) and Application Note 2, this Guidelines range should be reduced by the period of imprisonment served by the defendant for the state convictions.  As of the date of this agreement, the Office and the defendant agree that the defendant has served 44 months' imprisonment for the state convictions.

Id. ¶ 3.

Section 3585(a) specifies that a federal sentence commences on the date the prisoner is received at the detention facility at which the sentence is to be served.  Section 3585(b) gives the BOP authority to credit against the sentence time served prior to the commencement of the sentence.

> **(a) Commencement of sentence.**--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> **(b) Credit for prior custody.**--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> **(1)** as a result of the offense for which the sentence was imposed; or
>
> **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C.A. § 3585 (a), (b).

The government correctly asserts that § 3585(b)(2) does not allow BOP to give Petitioner credit for the 49 months prior to imposition of Petitioner's federal sentence because that time was credited against Petitioner's New York sentence. See Rios, 201 F.3d at 269 (section 3585(b) does not permit BOP to grant credit for time served that has been credited against defendant's state sentence). Moreover, under § 3585(a), Petitioner's sentence would have commenced on July 26, 2001, the date he was taken into federal custody. However, pursuant to 18 U.S.C. § 3584 and United States Sentencing Guideline § 5G1.3(c), Judge Raggi determined that Petitioner's federal sentence would run concurrently to the then undischarged portion of Petitioner's New York sentence.[2]  See Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002). In order

---

[2] Section 3585(b) governs calculation of a federal sentence by BOP, but § 3584 governs the authority of the sentencing court to impose a sentence that runs concurrent to a state sentence. Section 3584 provides:

(continued...)

to effectuate Judge Raggi's order to run the federal sentence concurrently with the then undischarged remainder of Petitioner's New York sentence, the BOP calculated Petitioner's sentence as commencing on June 28, 1996, the date Judge Raggi imposed it.

This Court has reviewed the judgment of conviction and the sentencing transcript, in addition to the plea agreement, and finds that Judge Raggi intended the sentence to run for 168 months, beginning on June 28, 1996, the date it was imposed, and to run concurrently with the New York sentence from that point forward.  The transcript shows that Judge Raggi accepted the

---

[2](...continued)
>(a) Imposition of concurrent or consecutive terms.--If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.
>
>(b) Factors to be considered in imposing concurrent or consecutive terms.--The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).
>
>(c) Treatment of multiple sentence as an aggregate.--Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S.C. § 3584; see also Ruggiano, 307 F.3d at 132 (sentencing court has authority under 18 U.S.C. § 3584 and United States Sentencing Guideline § 5G1.3(c) to order a federal sentence to be fully and retroactively concurrent to a state sentence the defendant was already serving); Rios v. Wiley, 201 F.3d 257 (3d Cir. 2000) (same).

plea agreement with Petitioner as part of a global plea agreement between the government and seven defendants. In the colloquy between the court and counsel for one of the co-defendants, Judge Raggi expressly rejected the proposition that the agreed-upon sentence for any defendant would commence prior to June 28, 1996:

> THE COURT:  Let me state my reasons for agreeing to depart . . . . The decision by Mr. McGlaughlin and so may of his other defendants to plead guilty as part of a global settlement agreement with the government has, while not eliminated the case from the Court's docket, greatly reduced the complexity of trying it . . . . I think that given the saving of resources and the difficulties presented in this case, justice is adequately done by the 11E1C plea.
>
> What I've said as to Mr. McGlaughlin applies equally to other defendants and so, while I may touch on it briefly as it applies to them individually, I won't be repeating this statement as to each defendant . . . .
>
> Your letter to me does ask that I commence the sentence nunc pro tunc as of April 2nd, 1996. I'll hear from the government as to doing that, but if I do it, then don't I have to recalculate the sentence . . . ?
>
> MR. CUTLER [attorney of co-defendant McGlaughlin] . . . We found out from the Bureau of Prisons . . . that Mr. McGlaughlin's federal sentence wouldn't commence until the Court imposed sentence on him, and that would be today, June 28th, 1996 . . . . But the presentence investigation report took a long time in coming. I wanted to make up for that dead time, so to speak, by asking the Court to sentence him as if you sentenced him on April 2nd, so that would save him three months. That's my rationale, Your Honor . . . .
>
> THE COURT . . . It seems to me that everybody has worked conscientiously to keep this case on schedule once the pleas were taken, and so I'm not going to make this sentence nunc pro tunc. This was the understanding at the time of the pleas . . .

United States v. Sessa, Crim Nos. 94-1119, 95-1155 (RR) transcript at p.6-10 to p. 11-9 (E.D. N.Y. June 28, 1996).

The following colloquy occurs when Judge Raggi imposed the sentence on Petitioner Capaldo:

9

> THE COURT:  When I said we were similarly situated here, I believe that Mr. Capaldo faces a guideline level that would then require me to give him credit for state time and then consider downward departure, similar to what happened with Mr. McGlaughlin.  Let me begin by starting with the guideline calculation level . . . his guideline range is 235 to 293 months . . . In Mr. Capaldo's case, he I believe has served as of this month 48 months of a state sentence.
>
> MR. GOLD [Petitioner's attorney]:  Actually, Your Honor, as of this coming Tuesday, it will be 49 months . . .
>
> THE COURT:  I think that means then that the reduction or the credit for that time, the reduction is really how I should put it, would mean that I would be considering a sentencing range under the guidelines of 186 to 252 months . . . The agreed upon sentence here is 168 months, which means that we would be talking about an 18 month departure . . . For the reasons that I stated in Mr. McGlaughlin's case, I would also be willing to depart downward in Mr. Capaldo's case.

Id. at p. 19-5 to 20-6.

The sentencing transcript shows that, in accordance with the plea agreement, Judge Raggi deducted the 49-month period which Petitioner now seeks credit for in this Petition, from the applicable guideline range of 235 months to reach 186 months, and then granted an additional 18-month downward departure and imposed the agreed upon 168-month sentence.  The transcript also establishes that Judge Raggi intended this 168-month sentence to begin on the date the sentence was imposed, June 28, 1996.  There is no dispute that the BOP calculated Petitioner's sentence as beginning on June 28, 1996, and running for 168 months.  This is precisely what the plea agreement states and what Judge Raggi intended.  Because the BOP correctly calculated Petitioner's sentence, Petitioner is not entitled to a Writ of Habeas Corpus and the Petition will be dismissed with prejudice.

## III.  CONCLUSION

For the reasons set forth above, the Court dismisses the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241.  An appropriate order accompanies this Opinion.


    s/Freda L. Wolfson
    **FREDA L. WOLFSON, U.S.D.J.**

Dated:   May 22  , 2006